MATTER OF G—

In DEPORTATION Proceedings

A-10928946

*Decided by Board February 19, 1962*

Communist Party—Voluntariness of membership—Willfulness of misrepresentation not overcome by respondent's claim that although a member of the Communist Party, he was not a communist.

(1) Voluntary and meaningful membership is established by respondent's testimony that he joined the Communist Party of Hungary in 1948 to secure preference in obtaining material for his father's plumbing supply store; that he continued his membership in the party for six years after the nationalization of his father's business in 1950 because he could earn more money in that manner; and that he was a member of a "Committee of Five" within the Communist Party, and later secretary of that committee.

(2) Respondent's claim that his failure to reveal his Communist Party membership was not willful because while a member of the party he was ideologically not a communist and, therefore, truthfully answered the visa-issuing officer's question as to whether he was a communist, as distinguished from a member of the party, is untenable and does not overcome the presumption of official regularity surrounding the issuance of the visa.

CHARGES:

Order: Act of 1952—Section 241(a)(1) [8 U.S.C. 1251(a)(1)]—Excludable at time of entry—Alien who had been a member of the Communist Party of a foreign state.

Act of 1952—Section 241(a)(1) [8 U.S.C. 1251(a)(1)]—Excludable at time of entry—Visa procured by fraud.

BEFORE THE BOARD

DISCUSSION: On October 24, 1961, this Board withdrew the outstanding order of deportation and reopened proceedings for further consideration by the special inquiry officer in accordance with *Matter of S— and B—C—,* 9—436. At that time we directed that the decision of the special inquiry officer upon the reopened proceeding be certified to this Board. On January 3, 1962, the special inquiry officer, following a hearing held on November 30, 1961, found that both charges contained in the order to show cause were sustained; concluded that the respondent was deportable therefor, but granted him the discretionary relief of voluntary departure.

570

The respondent is a 36-year old married male, a native and last a citizen of Hungary. On December 7, 1956, he was admitted to the United States for permanent residence upon presentation of an immigrant visa which was issued to him at the American Embassy in Vienna, Austria, on December 3, 1956. Other facts concerning the respondent's background and activities heretofore have been fully covered in two separate opinions of the special inquiry officer. They need not be completely restated at this time.

The respondent, through his attorney, has submitted a brief in opposition to the decision of the special inquiry officer, which brief indicates that there are two points at issue in these proceedings. The first point argued by counsel for the respondent is that it is error to find that the respondent's membership in the Communist Party in Hungary was meaningful. Counsel's second point is that the evidence in the record does not support a finding that the respondent willfully concealed his membership in the Communist Party at the time he applied for and secured an immigrant visa and that such concealment cut off pertinent inquiries into the question of his admissibility. We shall consider these points seriatum.

It is counsel's contention that the Government has furnished no proof regarding the nature and character of the respondent's membership in the Communist Party, apart from his own testimony. Assuming arguendo that this is true, it is then necessary for us to examine respondent's testimony regarding the nature of his membership. The record indicates, and the respondent by his own testimony admits, that he was a member of the Communist Party for almost 8 years prior to his departure from Hungary in November 1956. Furthermore, and this is indicated on page 18 of the transcript of the hearing accorded him on May 19, 1959, he never did actually resign his membership in the Communist Party. The respondent's testimony is to the effect that he join the Communist Party in order to assist his father, who was a licensed plumbing supply dealer, in getting material for his father's store. Respondent's testimony further shows that the father's store became nationalized in 1950. In answer to an inquiry regarding his continuation in the Communist Party upon and after the nationalization of his father's store, the respondent testified that he continued in the Communist Party in order to obtain factory employment rather than work in the mines. He further stated that at that time he could have worked elsewhere than at the General Machine Industry Supply Co., where he obtained employment with the assistance of the Communist Party (pp. 13, 15 and 21 of the hearing May 19, 1959).

The further testimony of the respondent is to the effect that he became an active participant of the Communist Party, was appointed a member of the "Committee of Five," and thereafter was elected

571

secretary of the "Committee of Five." As a result of holding these offices he was paid a greater salary than he would have received otherwise. His testimony further indicates that approximately 60 per cent of the employees of the plant where he worked were not members of the Communist Party. Two points relative to the first charge can be extracted from the respondent's own testimony. The first point is that the respondent joined the Communist party to assist his father who was not under any personal economic duress at the time he joined. The second point which can be drawn from the respondent's testimony is that his continued membership in the Communist Party for some 6 years after the nationalization of his father's shop was the result of his confessed desire to earn more money. Nowhere in this record is it shown that the respondent's failure to join the Communist Party would result in his being deprived of any of the necessities of life. Accordingly, we conclude that the respondent's membership was indeed the meaningful membership as contemplated by the Immigration and Nationality Act of 1952.

We proceed now to the second point of the respondent's argument. It is the respondent's position, and he and his brother have so testified, that he was not specifically asked by the visa-issuing officer if he were ever a member of the Communist Party. He testified that at the time of his application for an immigrant visa he was asked if he were a communist. Claiming that ideologically he never was a communist, despite his membership in the Communist Party, the respondent justified his negative answer to the consul. He, therefore, draws a thin line between a communist and a member of the Communist Party. This is done despite his extended active participation in the Communist Party, together with the concomitant benefits which he enjoyed as a result of the membership. However, this attempted distinction loses some of its import upon a study of his testimony and the variation in his statements in the hearing conducted on May 19, 1959, and the hearing conducted on November 30, 1961. In the earlier hearing, on page 28, the respondent, in answer to a question put to him by the examining officer, states that he doesn't remember if he were asked at the time he was applying for an immigrant visa to state all the organizations to which he belonged. This bit of testimony, coupled with the admitted misrepresentations made by him at Camp Kilmer that he was never a member of the Communist Party, compares most interestingly with his testimony at the bottom of page R-3 and continuing to page R-4 at the November 30, 1961 hearing. The latter testimony would indicate that the respondent's memory improves with age, for in the above-cited pages he manifests a clear, precise and detailed knowledge of exactly what took place at the time he applied for an immigrant visa. He gives

examples of the questions he was asked, among which he states was, ". . . was I ever a Communist?" The testimony of the respondent in this posture continues, and on page R-22 of the reopened hearing the following is another aspect of his position:

Q. The question which I asked you, and I would appreciate your answering. Did you know in November of 1956 that those Hungarians who had escaped from Hungary to Austria and who were applying for visas who had been members of the Hungarian Communist Party had difficulty in obtaining visas to enter the United States as Hungarian refugees?

A. Yes, I did have such ideas. I wasn't sure that this was so, but I had a suspicion that it might be so.

Q. Were you aware at that time that other Hungarians who had disclosed their membership in the Communist Party had been rejected or delayed in obtaining immigrant visas to come to the United States?

A. No sir, I was not aware of that. I didn't hear anything about this *because we spent only about a week in Vienna or ten days.* [Emphasis supplied.]

The respondent does not deny that his signature appears on the application for an immigrant visa. He does not deny that this was executed by him before the Consular Officer at Vienna, Austria. He does not deny that he was sworn by the Consular Officer. Under 22 C.F.R. 42.117(b) of the Department of State regulations, it is required that a visa applicant read the application for an immigrant visa when it is completed, or that it shall be read to him in his language, or that he shall be otherwise informed as to the complete contents of the application. This regulation raises a presumption that the respondent was aware of the full contents of the visa as a matter of official regularity. The testimony of the respondent and the witness taken as a whole is not sufficient to rebut this presumption.

From all of the above, it appears without a doubt that the respondent's misrepresentation was indeed material. We have discussed at some length the question of its willfulness; and in consideration of the entire record, and bearing in mind the inconsistencies and admitted misrepresentations of the respondent, we find the explanation as to lack of willfulness to be incredible. Furthermore, we must rely upon the presumption of official regularity, and in so doing we cannot conceive an employee of the Embassy at Vienna failing to ask the respondent if he had ever been a member of the Communist Party. It is our further belief that under the peculiar circumstances in this case the respondent's journey into the field of semantics with the resultant attempt to distinguish between a communist and a member of the Communist Party is totally untenable. We, therefore, find that the second charge is sustained.

To summarize, it is our conclusion that the respondent voluntarily and without duress joined the Communist Party in Hungary in 1948

573

and continued as a member after 1950 until the time he applied for his visa. His willfulness in withholding this membership from the authorities at the American Embassy in Vienna is established on this record. Accordingly, the following order will be entered.

**ORDER:** It is ordered that the appeal be and the same is hereby dismissed.